UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS JIMENEZ, in a Representative capacity only, on behalf of all aggrieved employees,<br><br>Plaintiff,<br><br>v.<br><br>CRC PROPERTY MANAGEMENT WEST INC., a California Corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.:  3:19-CV-01547-JAH-MSB<br><br>***AMENDED ORDER:***<br>**(1) DENYING PLAINTIFF'S MOTION TO REMAND TO STATE COURT [DOC. NO. 14]; AND**<br>**(2) DENYING DEFENDANT'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL EVIDENCE [DOC. NO. 44]** |

## I. **INTRODUCTION**

This matter comes before the Court on Plaintiff's Motion to Remand (Doc. No. 14) and Defendant's Motion for Leave to File Supplemental Evidence (Doc. No. 44). For the reasons set forth below, both motions are DENIED.

## II. **BACKGROUND**

On July 8, 2019, Plaintiff Jesus Jimenez ("Plaintiff") filed a complaint under the Private Attorneys General Act of 2004 ("PAGA") ("Complaint") in the Superior Court of California against Defendants CRC Property Management West Inc. ("Defendant") and Does 1 through 10 for wage-and-hour violations of the California Labor Code. (Doc. No. 1-4). Plaintiff's Complaint alleges claims for (1) meal and rest period violations, (2)

1

minimum wage violations, (3) overtime violations, (4) wage statement violations, and (5) failure to reimburse for necessary business expenditures. (*Id.*). From approximately May 18, 2015, Plaintiff has been employed by Defendant as a non-exempt employee working in San Diego County, California. (*Id.* at 11-12). On July 18, 2019, the Complaint and Summons were personally served on Defendant. (Doc. No. 1 at 3). On August 16, 2019, Defendant removed the action to federal court, asserting this Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1441(a) pursuant to the Federal Enclave Doctrine. (*Id.* at 4-5). On September 13, 2019, Plaintiff filed the pending Motion to Remand. (Doc. No. 14). On October 7, 2019, Defendant filed an opposition to Plaintiff's Motion. (Doc. No. 24). On October 11, 2019, Plaintiff replied. (Doc No. 25).

In addition, on April 17, 2020, Defendant filed a Motion for Leave to File Supplemental Evidence in support of notice of removal and opposition to Plaintiff's Motion to Remand. (Doc. No. 43). On May 4, 2020, Plaintiff filed an opposition to Defendant's Motion. (Doc. No. 45).  On May 11, 2020, Defendant replied. (Doc. No. 46).

### III. <u>LEGAL STANDARD</u>

The federal court is one of limited jurisdiction. *See Gould v. Mutual Life Ins. Co. v. New York*, 790 F.2d, 774 (9th Cir. 1986). As such, it cannot reach the merits of any dispute until it confirms its own subject matter jurisdiction. *Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83, 93-94 (1998). "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Id*. at 94 (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1868)). District courts must construe the removal statutes strictly against removal and resolve any uncertainty as to removal in favor of remanding the case to state court. *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988).

Removal jurisdiction is governed by 28 U.S.C. § 1441 et seq. A state court action can only be removed if it could have originally been brought in federal court. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). The Court determines its jurisdiction from the complaint as it existed at the time of removal, not as subsequently amended. *Libhart v.*

3:19-CV-01547-JAH-MSB

*Santa Monica Dairy Co.*, 592 F.2d 1062, 1065 (9th Cir. 1979). Thus, for an action to be removed based on federal question jurisdiction, the complaint must establish either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on the resolution of substantial questions of federal law. *See Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 10-13 (1983). At the same time, "a plaintiff may not defeat removal by omitting to plead necessary federal questions." *Id*. at 22. If the plaintiff uses "artful pleading" in a claim, a court may uphold removal regardless of whether a federal question appears on the face of the complaint. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-67 (1987).

The defendant has the burden of establishing that removal is proper and supporting its jurisdictional allegations with competent proof. *Gaus v. Miles, Inc.,* 980 F.2d 564, 566-67 (9th Cir. 1992) (per curiam); *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n.3 (9th Cir. 1990). In addition, the defendant must file a timely notice of removal. 28 U.S.C. § 1446(b). The notice of removal must be filed within 30 days after receipt of a copy of the initial pleading if removal can be determined from its text. *Id.* If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. 28 U.S.C. § 1447(c).

## IV. **DISCUSSION**

Defendant removed this action on the basis that all of Plaintiff's claims relate to his employment with Defendant at Naval Base San Diego, an alleged federal enclave (specifically, his employment at Pacific Beacon Property ["Pacific Beacon"]).[1] (Doc. No. 1 at 4). Whether the United States has acquired exclusive jurisdiction over a federal enclave is a federal question that falls under this Court's jurisdiction. *Paul v. United States*, 371 U.S. 245, 267 (1963).

To determine whether to remand the pending action, the Court must first address

---

[1] Pacific Beacon (3705 Norman Scott Rd, San Diego, CA 92113) is a housing area located within Naval Base San Diego under partial legislative jurisdiction of the United States. (Doc. No. 24-1).

four issues: whether the grant of partial jurisdiction over Pacific Beacon is sufficient to establish federal enclave status; whether Pacific Beacon *is* a federal enclave; whether the Court has federal subject matter jurisdiction over Plaintiff's state law claims; and whether Defendant's removal is valid despite Defendant's suspended business entity status with the California Secretary of State at the time of removal. Based on the following reasons, the Court finds removal appropriate.

A.    Pacific Beacon's Federal Enclave Status

Parties concede that (i) Naval Base San Diego has varying legislative jurisdiction throughout the base; and (ii) Pacific Beacon is subject to partial legislative jurisdiction of the United States. (Doc. No. 14-1 at 19; Doc. No. 24-1 at 7). Notably, all four properties that make up Pacific Beacon are also subject to the same partial jurisdiction.[2] Parties dispute, however, whether Pacific Beacon qualifies as a federal enclave. Plaintiff argues Pacific Beacon is not a federal enclave because federal enclave status requires a grant of exclusive jurisdiction. (Doc. No. 14-1 at 18). Defendant asserts exclusive jurisdiction is not necessary for federal enclave status because a federal enclave is defined as land over which the federal government exercises legislative jurisdiction, including partial legislative jurisdiction. (Doc. No. 24 at 19). The Court holds that Pacific Beacon is a federal enclave for the reasons set forth below.

A federal enclave is land over which the federal government exercises legislative jurisdiction, except to the extent that the state reserves to itself certain jurisdiction at the time of cession. *Hammer v. Dynamic Aviation Grp., Inc*., No. CV 08-8174 ODW(CWX), 2009 WL 10675681, at *2 (C.D. Cal. 2009) (citing *Taylor v. Lockheed Martin Corp*., 78 Cal. App. 4th 472, 478 (2000)); *George v. UXB Intern., Inc.*, 1996 WL 241624, at *3 (N.D.

---

[2] Patrick Huber, Attorney for the California State Lands Commission, confirms the four buildings which encompass the Pacific Beacon Property are subject to the same partial jurisdiction: Retzer (A) Building #3631, 3705 Norman Scott Rd., San Diego, CA 92135; Dietz (B) Building #3630, 3715 Norman Scott Rd., San Diego, CA 92135; Axelson (C) Building #3632, 3695 Norman Scott Rd., San Diego, CA 92136; and Palmer Hall #3621, 3725 Norman Scott Rd., San Diego, CA 92136. (Doc. No. 24-1 at 2, 5-6).

Cal. 1996) (citing *Paul v. United States*, 371 U.S. 245, 264 (1963)); *see also* U.S. Const. art. I, § 8, cl. 17. When a state cedes jurisdiction and Congress accepts that cession, the federal government can obtain either exclusive, concurrent, or partial jurisdiction. *Kleppe v. New Mexico*, 426 U.S. 529, 542 (1976); *United States v. Jones*, 921 F.3d 932, 935 n.2 (10th Cir. 2019); *Allison v. Boeing Laser Tech. Servs*., 689 F.3d 1234 (10th Cir. 2012); 3 U.S. General Accountability Office, Principles of Federal Appropriations Law, 13 GAO-RB pt. D, s. 1 WL 6969324, at *3 (3rd ed. 2008). As is relevant here, partial legislative jurisdiction exists where the state of California has ceded all its jurisdiction except the powers to tax and serve process. (Doc. No. 24-1 at 7).

The Court finds Plaintiff's reliance on *Kelly v. Lockheed Martin Services Group* to support its argument that federal enclave status requires a grant of exclusive jurisdiction is misplaced. (Doc. No. 14-1 at 18); *Kelly v. Lockheed Martin Servs Grp.*, 25 F. Supp. 2d 1, 3-4 (D. Puerto Rico 1998). The *Kelly* court clarifies that exclusive jurisdiction is not the only form of federal enclave jurisdiction. *Kelly*, 25 F. Supp. 2d 1, 3 n.3. Notably, a reservation of authority by the state in a grant of jurisdiction does not negate federal enclave status. *Paul v. United States*, 371 U.S. 245, 264 (1963) ("a state [can] complete the 'exclusive' jurisdiction of the Federal Government over such an enclave by 'a cession of legislative authority and political jurisdiction.'"); *see also Collins v. Yosemite Park & Curry Co.*, 304 U.S. 518, 530 (1938); *Mersnick v. USProtect Corp.,* 2006 WL 3734396, at *6 (N.D. Cal. 2006); *Kerr v. Delaware North Companies, Inc.*, 2017 WL 880409, at *5 (E.D. Cal. 2017). The main principle of the federal enclave doctrine is that the federal government has exclusive *authority* over a federal enclave, not that a grant of exclusive *jurisdiction* is required for a land to obtain federal enclave status. *See* U.S.C. art. 1, § 8, cl. 17; s*ee also Paul v. United States*, 371 U.S. 245 (1963); *Kennicott v. Sandia Corporation*, 314 F. Supp. 3d 1142 (D.N.M. 2018).

Accordingly, Pacific Beacon is a federal enclave because California has ceded all jurisdiction over Pacific Beacon to the federal government except the powers to tax and serve process. (Doc. No. 24-1 at 7).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

B.    <u>Application of Federal Enclave Doctrine to Plaintiff's State Law Claims</u>

Now that the Court has determined Pacific Beacon is a federal enclave, the discussion turns toward whether Plaintiff's state law claims[3] are barred by the federal enclave doctrine.

Plaintiff requests recovery for his claims under PAGA, which allows employees to recover state civil penalties on behalf of themselves, other employees, and the state of California for Labor Code ("Labor Code") violations. Cal. Lab. Code § 2698 et seq. Plaintiff argues his claims are not barred because the Industrial Welfare Commission ("IWC") regulatory regime and California's minimum wage laws were enacted in 1916, prior to the federal government's acquisition of Naval Base San Diego on February 23, 1922. (Doc. No. 14-1 at 22) (citing *Murphy v. Kenneth Cole Productions Inc.*, 50 Cal. 4th 1094 (2007)). Plaintiff makes no concession to amend the Complaint to exclude claims arising from work performed on the federal enclave. Defendant opposes, contending that Plaintiff's claims are barred because the California state wage-and-hour laws at issue (i) did not exist at the time of cession, and (ii) are inconsistent with the federal Fair Labor Standards Act ("FLSA"). (Doc. No. 24 at 22-23). For the reasons set forth below, the Court holds Plaintiff's state law claims are barred by the federal enclave doctrine.

Federal courts have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States, including claims pursuant to the federal enclave doctrine. 28 U.S.C. § 1331. The federal enclave doctrine draws its authority from Article I, section 8, Clause 17 of the U.S. Constitution:

> Congress shall have power * * * To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat

---

[3] Plaintiff's complaint alleges the following violations of California Labor Code section 2698 et seq.: (1) meal and rest period violations, (2) minimum wage violations, (3) overtime violations, (4) wage statement violations, and (5) failure to reimburse for necessary business expenditures. (Doc 1-4).

of Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings.

U.S. Const. art. I § 8, cl. 17. Unless repudiated by Congress, the laws applicable to a federal enclave include (i) federal law and (ii) state laws that were in effect at the time of cession and are not inconsistent with federal law. *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1889-90 (2019) (citing *James Stewart & Co. v. Sadrakul*, 309 U.S. 94, 100 (1940)); *see Chicago, R. I. & P. R. Co. v. McGlinn*, 114 U. S. 542, 547 (1885). Given the federal government's exclusive jurisdiction over federal enclaves, preexisting state law not inconsistent with federal law continues in force as surrogate federal law, unless altered by Congress. *Korndobler v. DNC Parks & Resorts at Sequoia*, 2015 WL 3797625 (E.D. Cal. 2015); *Zuniga v. Chugach Maint. Servs.*, 2006 WL 769317 (E.D. Cal. 2006).

Three exceptions to exclusive enclave jurisdiction exist. First, state regulatory schemes in existence prior to the date of cession, but which require ongoing regulatory changes, will not be preempted, unless they are inconsistent with federal law. *Paul*, 371 U.S. 245, 268-69 (1963); *Parker Drilling Mgmt. Servs.*, 139 S. Ct. at 1889-90. Second, state law is not preempted if Congress specifically authorized such state regulation over the federal enclave. *Swords to Plowshares v. Kemp*, 423 F. Supp. 2d 1031 (N.D. Cal. 2005). Finally, state laws subsequently enacted by a state are inapplicable in the federal enclave unless the state legislature reserved the right to do so at the time of cession. *See Paul*, 371 U.S. 245, 268 (1963); *Allison*, 689 F.3d 1234, 1238 (10th Cir. 2012); *Cooper v. S. Cal. Edison Co.*, 2006 WL 616264 (9th Cir. May 10, 2006) (holding claims based on state law recognized after government acquisition are barred by federal enclave doctrine).

Here, the Court finds no such exception applies to Plaintiff's claims because (i) the state laws at issue were enacted after the federal government acquired Pacific Beacon; (ii) the state laws at issue are inconsistent with FLSA; (iii) Congress did not authorize state regulation of wage-and-hour issues on Pacific Beacon at the time of cession; and (iv)

California did not reserve the right to apply state wage-and-hour laws to Pacific Beacon at the time of cession. Because parties dispute the validity of the first two reasons in their respective pleadings, the Court will address these issues in turn below.

### 1. *State Laws Adopted After Federal Acquisition of Pacific Beacon*

Parties do not dispute that Naval Base San Diego, the property upon which Pacific Beacon is located, was founded on February 23, 1922. (Doc. No. 1 at 4-5; Doc. No. 14-1 at 22).[4] Thus, the Court considers February 23, 1922 as the date of acquisition in its discussion of federal enclave jurisdiction.

Here, PAGA is inapplicable to the present action because the law was enacted in 2004, unquestionably after the federal government's acquisition of Pacific Beacon in 1922. Plaintiff's claims that are pursuant to specific California Labor Codes are barred because they were also enacted after the federal government's acquisition of Pacific Beacon in 1922. Plaintiff's claim for meal and rest period violations pursuant to Labor Code sections 226.7 and 512 are barred because section 226.7 was enacted in 2000 and section 512 was enacted in 1999. *See* Cal. Lab. Code §§ 226.7, 512. Plaintiff also asserts a claim for minimum wage and overtime wage violations pursuant to Labor Code sections 510 and 1194, which were both enacted in 1937. *See* Cal. Lab. Code §§ 510, 1194. Similarly, Labor Code section 226 (pertaining to wage statements) was enacted in 1943, and Labor Code section 2802 (pertaining to expense reimbursements) was enacted in 1937. *See* Cal. Lab. Code §§ 226, 2802.

To the extent any of the IWC regulatory schemes for the Plaintiff's asserted claims was in place at the time of cession and require ongoing regulatory changes, as explained below, the claims are nonetheless barred because they are inconsistent with federal law.

### 2. *State Laws Inconsistent with Federal Laws*

Now that the Court has determined the California laws in Plaintiff's complaint were

---

[4] Both Plaintiff and Defendant fail to provide a specific date of federal acquisition for Pacific Beacon, the federal enclave of relevance to this action.

enacted after the federal government's acquisition of Pacific Beacon in 1922, the discussion turns towards whether those laws are inconsistent with federal law. For the following reasons, Plaintiff's claims premised on IWC Wage Order 4 and the California Labor Code fail because they are inconsistent with federal law, and federal law applies.

The Court applies the Supreme Court's standard in addressing the question of whether the relevant California state laws are inconsistent with federal law. *Parker Drilling Mgmt. Servs. v. Newton*, 139 S. Ct. 1881 (2019). In *Parker Drilling Mgmt. Servs.*, the Supreme Court held that state law is inconsistent with federal law if federal law has already addressed the issue at hand because "state law addressing the same issue would necessarily be inconsistent with existing federal law and cannot be adopted as surrogate federal law." 139 S. Ct. at 1889. Put simply, state laws are inapplicable on a federal enclave when federal law provides coverage for a particular issue. *Id.* at 1892.

Plaintiff's first claim for violation of IWC Wage Order 4 and Labor Code sections 226.7 and 512 is premised on (i) Defendant's written policies being non-compliant with California law; (ii) Defendant's failure to allow its employees duty-free breaks on occasion; and (iii) Defendant's failure to properly provide meal and rest break premiums in accordance with the law. (Doc. No. 1-4 at 13). Under Labor Code sections 226.7 and 512, Defendant should have paid Plaintiff one extra hour of pay at his normal hourly rate for each rest or meal period Plaintiff was on duty. While FLSA does not mirror the meal and rest period requirements of the Labor Code, it provides sufficient coverage of meal period requirements and there exists no "significant void or gap." *See* 29 U.S.C. § 207; *Cal. Dairies, Inc. v. RSUI Indem. Co.*, 617 F. Supp. 2d 1023, 1044 (E.D. Cal. 2009) (noting that while state law meal and rest benefits are not identical to the FLSA, both provide some form of meal and rest benefits to be paid by, and which are entirely within the control of, the employer even if the amounts are calculated differently). Specifically, FLSA requires an employer to compensate an employee at a straight-time wage rate for non-bona fide

meal periods,[5] and at an over-time wage rate for all hours worked in excess of forty hours per week, including non-bona fide meal periods. 29 U.S.C. § 207(a)(1). Because federal law addresses Plaintiff's first claim, IWC Wage Order 4 and Labor Code sections 226.7 and 512 are inconsistent with federal law and do not apply to Pacific Beacon.

Plaintiff's second and third claims for violation of Labor Code sections 510 and 1194 are premised on Defendant's failure to pay its employees appropriate straight-time, overtime, and double time wages. (Doc. No. 1-4 at 13). FLSA addresses the minimum wage issue in 29 U.S.C. §§ 206(a)(1) and 218 (requiring employers to provide a minimum wage of no less than $7.25 an hour), and the overtime wage issue in 29 U.S.C. § 207(a)(1) (requiring employers to compensate employees at an over-time wage rate for all hours worked in excess of forty hours per week).[6] FLSA also provides a path for enforcing penalties in 29 U.S.C. § 216(b), subjecting employers who fail to pay minimum or overtime wages to penalties equal to the amount of unpaid wages. For these reasons, Labor Code sections 510 and 1194 are inconsistent with federal law and are inapplicable on Pacific Beacon.

Plaintiff's fourth claim for violation of Labor Code section 226 is premised on Defendant's failure to provide accurate itemized wage statements. (Doc. No. 1-4 at 13-14). FLSA requires employers to maintain accurate records of employee hours worked and wages paid, *inter alia*, and to provide copies of these records to employees. *See* 29 U.S.C. § 211(c) (requiring employers to maintain records of employee wages and hours). Because FLSA addresses employer requirements for recordkeeping of wages and hours, and penalties for violation of such requirements, Labor Code section 225 is inconsistent with federal law and inapplicable on Pacific Beacon.

---

[5] *See* 29 C.F.R. § 785.19 (defining bona fide meal periods as time during which an employee "must be completely relieved from duty for the purposes of eating regular meals.").

[6] *See Parker Drilling Mgmt. Servs.,* 139 S. Ct. at 1893 (noting that the question is whether federal law addresses minimum wage, not whether state law pre-emption exists).

Plaintiff's fifth claim for violation of Labor Code section 2802 is premised on Defendant's failure to properly reimburse employees for necessary business expenditures such as "cell phone costs and other work supplies." (Doc. No. 1-4 at 13). Federal law addresses the issue of payment by an employer for work-related expenses: "[I]f it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act." 29 C.F.R. § 531.35. Put simply, federal law allows an employer to deduct such costs from an employee's wages as long as the weekly wage meets the federal minimum requirement. *Id.* Therefore, Labor Code section 2802 is inconsistent with federal law and inapplicable on Pacific Beacon.

As such, Plaintiff's claims premised on the IWC Wage Order 4 and California Labor Code for wage-and-hour violations fail because federal law already addresses the issues at hand. State laws inconsistent with federal law are inapplicable on Pacific Beacon.

### C.  Defendant's Suspended Business Entity Status

Plaintiff argues that Defendant's removal was procedurally improper. (Doc. No. 14-1 at 7). Specifically, that Defendant lacked the right to remove this case to federal court because Defendant's business entity status was suspended by the California Secretary of State when it filed for removal on August 16, 2019. (*Id.* at 7-8). Thus, Plaintiff argues, Defendant was prohibited from proceeding in litigation pursuant to Federal Rule of Civil Procedure section 17(b)(2) and California Revenue and Tax Code section 23301. (*Id.*)

The parties admit that Defendant was erroneously named and sued as a corporation, and that Defendant instead is a limited liability company ("LLC"). (Doc No. 1 at 2; Doc. No. 14-1 at 7). As such, its capacity to engage in litigation is governed by the law of the state where this Court is located: California. Fed. R. Civ. P. 17(b)(3). "Capacity" to engage in litigation is a party's right to come into court. *De Franco v. United States*, 18 F.R.D. 156, 159 (S.D. Cal. 1955).

Neither party expressly indicates, or provides evidence of, the specific reason(s) why Defendant's corporate status was suspended (e.g., for failing to pay taxes or file required statements with the state). For instance, California requires every LLC to file a statement of information. Cal. Corp. Code § 17702.09. If an LLC fails to file the statement for two years, then the Secretary of State must notify the LLC that its powers, rights, and privileges will be suspended if it fails to file the statement within sixty days. *Id*. §§ 17713.10(a)-(c). However, once suspended, an LLC can file the statement to become active again and restore its powers, rights, and privileges, unless the LLC is suspended for not paying taxes. *Id*. § 17713.10(d). Similarly, an LLC that is suspended for failing to pay taxes can be relieved from suspension and become active if it pays the taxes, penalties, and interest owed. Cal. Rev. & Tax. Code §§ 23305 & 23305a. Despite the reason why Defendant's LLC status was suspended, Plaintiff nevertheless asserts that section 23301 of the California Revenue and Tax Code controls Defendant's inability to proceed in this litigation. (Doc. No. 14-1 at 10-11).

A corporation that is suspended pursuant to section 23301 cannot litigate while suspended because they lack the right (i.e., capacity) to do so. *Welco Constr., Inc. v. Modulux, Inc.*, 47 Cal. App. 3d 69, 71 (1975). Suspension of rights under section 23301 applies to corporations that fail to meet their franchise tax obligations. See Cal. Rev. & Tax Code § 23301. Indeed, the purpose of section 23301 is to put pressure on delinquent companies to pay their taxes. *A. E. Cook Co. v. K S Racing Enterprises*, 274 Cal. App. 2d 499, 501 (1969). "That purpose is ordinarily satisfied by a rule viewing a corporation's tax delinquencies, after correction, as mere irregularities." *Benton v. Cty. of Napa*, 226 Cal. App. 3d 1485, 1490 (1991). Since Plaintiff did not allege that Defendant's business entity status was suspended because of its failure to pay taxes or provide any evidence that the California Secretary of State's action to suspend Defendant was made under the authority of the California Revenue and Tax Code, Plaintiff's argument is unavailing.

Defendant admits that its corporate status was suspended when it filed the removal notice on August 16, 2019, but it resolved this issue with the State of California to revive

its corporate status as active on or about September 23, 2019. (Doc. No. 24 at 13-14; Doc. No. 24-3) Therefore, the issue is whether Defendant's revival as an active LLC retroactively validated its actions taken during the suspension. The answer depends on whether filing the removal notice is treated as a "procedural act" or a "substantive act." *Page v. Children's Council*, 2006 WL 2595946, at *2 (N.D. Cal. 2006). Substantive acts taken during suspension may not be retroactively applied to the benefit of the now-active or revived business entity, whereas procedural acts taken during suspension are validated upon revival or reinstatement of corporate powers, rights, and privileges by the state of California. *Benton*, 226 Cal. App. 3d at 1490-91.

Most litigation activity has been characterized as procedural for purposes of corporate revival. *Benton*, 226 Cal. App. 3d at 1490. For example, a judgment obtained during suspension is validated by subsequent revivor. *Traub Co. v. Coffee Break Service, Inc.*, 66 Cal.2d 368, 371 (1967). A motion to dismiss an appeal because of a corporate party's suspension under section 23305 of the California Revenue and Taxation code may be denied if they comply with the code and are revived or reinstated as active by the state. *Peacock Hill Assn. v. Peacock Lagoon Constr. Co.*, 8 Cal.3d 369, 371–74 (1972). Appearing on and filing motions, as well as performing discovery, are validated by revivor. *Diverco Constructors, Inc. v. Wilstein*, 4 Cal. App. 3d 6, 12 (1970); see *Welco Constr., Inc.*, 47 Cal. App. 3d at 73.

Plaintiff correctly points out that Defendant's removal was a procedural act. (Doc. No. 14-1 at 7); see *Scott v. Gino Morena Enter. L.L.C.*, 2015 WL 847160, at *3 (C.D. Cal. 2015). Moreover, Plaintiff did not raise any other procedural issues related to Defendant's removal notice. Thus, under California law, Defendant's revivor retroactively validated its removal notice. Therefore, Plaintiff's argument that Defendant's removal was procedurally improper because Defendant's corporate status was suspended at the time of removal is moot.

### D.   Defendant's Motion for Leave to File Supplemental Evidence

Defendant's Motion requests that the Court consider supplemental evidence in

support of its removal notice and opposition to Plaintiff's Remand Motion. (Doc. No. 44). Specifically, Defendant wants the Court to consider Verizon cell phone location records to show that Plaintiff did not work at non-enclave locations under Defendant's employ. (Doc. No. 44-1). The Court need not consider supplemental evidence because, as discussed herein, the Court finds jurisdiction over Plaintiff's claims arising from events that occurred on Pacific Beacon. As for any claims arising from events that occurred at non-enclave locations, the Court will accept related state law claims as supplemental to federal law claims. Thus, for the following reasons, the Court denies Defendant's Motion for Leave.

Federal courts have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States, including claims pursuant to the federal enclave doctrine. 28 U.S.C. § 1331. In such cases, district courts "have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Put simply, in cases involving both federal law and state law claims, state law claims generally fall within supplemental jurisdiction of federal courts. *Id*.

Here, Plaintiff shall have an opportunity to re-file their Complaint in federal court. Plaintiff may plead federal law claims with respect to violations that occurred on Pacific Beacon, and plead state law claims with respect to violations that occurred at non-enclave locations. Indeed, both parties fail to provide specific dates, times, or locations for the violations stated in the Complaint. Out of over 100 aggrieved employees (Doc. 1-4 at 13), Plaintiff vaguely indicates they and two others worked at two alleged non-enclave locations, Veer and La Rancho Verde (Doc. 14-1 at 16-17, 21; Doc. 14-2; Doc. 14-3; Doc. 14-4). However, absent is when they worked at those locations and whether and when any of the violations stated in the Complaint occurred at those locations. Based on the information provided in the pleadings, the pertinent events took place on Pacific Beacon and "form part of the same case or controversy" as other events that may have taken place at non-enclave locations.

Accordingly, this Court has original jurisdiction over claims arising from events that

took place on Pacific Beacon and supplemental jurisdiction over claims arising from events that took place at non-enclave locations. Thus, Defendant's removal was proper, and the Court need not consider Defendant's Motion for Leave to File Supplemental Evidence in Support of Removal.

## V. <u>CONCLUSION AND ORDER</u>

For the foregoing reasons, IT IS HEREBY ORDERED Plaintiff's Motion to Remand to State Court is DENIED and Defendant's Motion for Leave to File Supplemental Evidence in Support of Notice of Removal and Opposition to Plaintiff's Motion to Remand is DENIED.

IT IS FURTHER ORDERED ***<u>Plaintiff may file a First Amended Complaint on or before October 22, 2021.</u>***

**IT IS SO ORDERED.**


DATED:      September 21, 2021


_____
JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE